72

United States District Court
Southern District of Texas
FILED

IN THE UNITED STATES COURT OF APPEALS

OCT 21 2002

Michael N. Milby
Clerk of Court

FOR THE FIFTH CIRCUIT

CAB-98-75

No. 01-40012

U.S. COURT OF APPEALS
FILED

AUG 2 0 2002

CHARLES R. FULBRUGE III
CLERK

JORGE LUIS MACHUCA GONZALEZ; MARTHA PATRICIA LOPEZ GUERRERO, Individually And As Heirs And Representatives Of The Estate Of Luis Pablo Machuca Lopez, Deceased,

                                        Plaintiffs - Appellants,

                            versus

CHRYSLER CORPORATION, Etc.; ET AL.,

                                                Defendants,

CHRYSLER CORPORATION, also known as Chrysler Motors Corporation; TRW, INC.; TRW VEHICLE SAFETY SYSTEMS, INC.; MORTON INTERNATIONAL, INC.,

                                        Defendants - Appellees.

---

Appeal from the United States District Court
for the Southern District of Texas, Brownsville Division

---

Before JOLLY, JONES, and BARKSDALE, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

In this forum non conveniens case, we first consider whether the cap imposed by Mexican law on the recovery of tort damages renders Mexico an inadequate forum for resolving a tort suit by a Mexican citizen against an American manufacturer and an American designer of an air bag. Holding that Mexico -- despite its cap on damages -- represents an adequate alternative forum, we next

consider whether the district court committed reversible error when it concluded that the private and public interest factors so strongly pointed to Mexico that Mexico, instead of Texas, was the appropriate forum in which to try this case. Finding no reversible error, we affirm the district court's judgment dismissing this case on the ground of forum non conveniens.

I

In 1995, while in Houston, the plaintiff, Jorge Luis Machuca Gonzalez ("Gonzalez")[1] saw several magazine and television advertisements for the Chrysler LHS. The advertisements sparked his interest. So, Gonzalez decided to visit a couple of Houston car dealerships. Convinced by these visits that the Chrysler LHS was a high quality and safe car, Gonzalez purchased a Chrysler LHS upon returning to Mexico.

On May 21, 1996, the wife of the plaintiff was involved in a collision with another moving vehicle while driving the Chrysler LHS in Atizapan de Zaragoza, Mexico. The accident triggered the passenger-side air bag. The force of the air bag's deployment instantaneously killed Gonzalez's three-year-old son, Pablo.

Seeking redress, Gonzalez brought suit in Texas district court against (1) Chrysler, as the manufacturer of the automobile; (2) TRW, Inc. and TRW Vehicle Safety Systems, Inc., as the designers of

---

[1]In this opinion, we refer to the plaintiffs collectively as Gonzalez.

2

the front sensor for the air bag; and (3) Morton International, Inc., as designer of the air bag module. Gonzalez asserted claims based on products liability, negligence, gross negligence, and breach of warranty. As noted, Gonzalez chose to file his suit in Texas. Texas, however, has a tenuous connection to the underlying dispute. Neither the car nor the air bag module was designed or manufactured in Texas. The accident took place in Mexico, involved Mexican citizens, and only Mexican citizens witnessed the accident. Moreover, Gonzalez purchased the Chrysler LHS in Mexico (although he shopped for the car in Houston, Texas). Because of these factors, the district court granted the defendants' identical motions for dismissal on the ground of forum non conveniens.[2] Gonzalez now appeals.

## II

### A

The primary question we address today involves the threshold inquiry in the forum non conveniens analysis: Whether the limitation imposed by Mexican law on the award of damages renders Mexico an inadequate alternative forum for resolving a tort suit brought by a Mexican citizen against a United States manufacturer.

We should note at the outset that we may reverse the grant or denial of a motion to dismiss on the ground of forum non conveniens

---

[2]In this opinion, we refer to the defendants collectively as Chrysler.

3

only "where there has been a clear abuse of discretion." Baumgart v. Fairchild Aircraft Corp., 981 F.2d 824, 835 (5th Cir. 1993).

The forum non conveniens inquiry consists of four considerations. First, the district court must assess whether an alternative forum is available. See Alpine View Co. Ltd. v. Atlas Copco AB, 205 F.3d 208, 221 (5th Cir. 2000). An alternative forum is available if "the entire case and all parties can come within the jurisdiction of that forum." In re Air Crash Disaster Near New Orleans, La. on July 9, 1982, 821 F.2d 1147, 1165 (5th Cir. 1987) (en banc), vacated on other grounds sub nom., Pan Am. World Airways, Inc. v. Lopez, 490 U.S. 1032 (1989). Second, the district court must decide if the alternative forum is adequate. See Alpine View, 205 F.3d at 221. An alternative forum is adequate if "the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court." In re Air Crash, 821 F.2d at 1165 (internal citation omitted).

If the district court decides that an alternative forum is both available and adequate, it next must weigh various private interest factors. See Baumgart, 981 F.2d at 835-36. If consideration of these private interest factors counsels against dismissal, the district court moves to the fourth consideration in the analysis. At this stage, the district court must weigh numerous public interest factors. If these factors weigh in the

4

moving party's favor, the district court may dismiss the case.  <u>Id.</u> at 837.

B

1

The heart of this appeal is whether the alternative forum, Mexico, is adequate.[3]

The jurisprudential root of the adequacy requirement is the Supreme Court's decision in <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235 (1981).  The dispute in <u>Piper Aircraft</u> arose after several Scottish citizens were killed in a plane crash in Scotland.  <u>Id.</u> at 238.  A representative for the decedents filed a wrongful death suit against two American aircraft manufacturers.  <u>Id.</u> at 240.  The Court noted that the plaintiff filed suit in the United States because "[U.S.] laws regarding liability, capacity to sue, and damages are more favorable to her position than are those of Scotland."  <u>Id.</u>  The Court further noted that "Scottish law does not recognize strict liability in tort."  <u>Id.</u>  This fact, however, did not deter the Court from reversing the Third Circuit.  In so doing, the Court held that "[a]lthough the relatives of the decedent may not be able to rely on a strict liability theory, and although their potential damage award may be smaller, there is no danger that they will be deprived of any remedy or treated unfairly

---

[3]It is undisputed that Mexico is an amenable forum because the defendants have agreed to submit to the jurisdiction of the Mexican courts.

5

[in Scotland]." <u>Id.</u> at 255.   Thus, the Court held that Scotland provided an adequate alternative forum for resolving the dispute, even though its forum provided a significantly lesser remedy.   In a footnote, however, Justice Marshall observed that on rare occasions this may not be true:

> At the outset of any forum non conveniens inquiry, the court must determine whether there exists an alternative forum. Ordinarily, this requirement will be satisfied when the defendant is "amenable to process" in the other jurisdiction.  In rare circumstances, however, where the remedy offered by the other forum is <u>clearly unsatisfactory</u>, the other forum may not be an adequate alternative, and the initial requirement may not be satisfied. Thus, for example, dismissal would not be appropriate where the alternative forum does not permit litigation of the subject matter of the dispute.

<u>Id.</u> at 255 n.22 (emphasis added)(internal citation omitted).

Citing the language from this footnote, Gonzalez contends that a Mexican forum would provide a clearly unsatisfactory remedy because (1) Mexican tort law does not provide for a strict liability theory of recovery for the manufacture or design of an unreasonably dangerous product and (2) Mexican law caps the maximum award for the loss of a child's life at approximately $2,500 (730 days' worth of wages at the Mexican minimum wage rate).   Thus, according to Gonzalez, Mexico provides an inadequate alternative forum for this dispute.

6

2

(a)

Gonzalez's first contention may be quickly dismissed based on the explicit principle stated in Piper Aircraft.  As noted, there the Supreme Court held that Scotland's failure to recognize strict liability did not render Scotland an inadequate alternative forum. Id. at 255.  There is no basis to distinguish the absence of a strict products liability cause of action under Mexican law from that of Scotland.[4]   Piper Aircraft therefore controls. Accordingly, we hold that the failure of Mexican law to allow for strict liability on the facts of this case does not render Mexico an inadequate forum.

---

[4]Although Mexico apparently recognizes strict liability against the defendant users of a dangerous product, it does not recognize strict liability against the manufacturer or designer of a dangerous product.  See art. 19 C.C.D.F; Symposium, Part-Five: A Serious Accident Occurs in the Mexican Plant: Problems of Corporate and Product Liability, 4 U.S.-MEX. L.J. 125, 128 (1996) ("[T]here is no cause of action under Mexican law for an injured party to sue a remote manufacturer or vendor, unless the plaintiff is in privity of contract with the defendant or can prove the manufacturer's or the vendor's negligence.  Product liability is a distinctly United States concept. . . . Mexican law does have a doctrine of strict liability, but not of product liability.  Under Mexico's strict liability, the defendant is normally the user (whether owner, agent or bailee) of an inherently dangerous mechanism, instrument, apparatus or substance who, with his use, injures the plaintiff") (citation omitted).  Similarly, Scotland at the time of the pertinent events in Piper Aircraft did not have strict liability for the design or manufacture of dangerous products.  See DAVID M. WALKER, THE LAW OF DELICT IN SCOTLAND, 614-615 (2d ed. 1981) ("Products liability came to Scotland with the Consumer Protection Act of 1987, but this was more than a decade after the operative facts in Piper.").

(b)

Gonzalez's second contention -- that the damage cap renders the remedy available in a Mexican forum "clearly unsatisfactory" -- is slightly more problematic.  Underlying this contention are two distinct arguments:  First, Gonzalez argues that if he brings suit in Mexico, the cap on damages will entitle him to a de minimis recovery only -- a clearly unsatisfactory award for the loss of a child.  Second, Gonzalez argues that because of the damage cap, the cost of litigating this case in Mexico will exceed the potential recovery.  As a consequence, the lawsuit will never be brought in Mexico.  Stated differently, the lawsuit is not economically viable in Mexico.  It follows, therefore, that Mexico offers no forum (much less an adequate forum) through which Gonzalez can (or will) seek redress.  We address each argument in turn.

(i)

In addressing Gonzalez's first argument, we start from basic principles of comity.  Mexico, as a sovereign nation,[5] has made a deliberate choice in providing a specific remedy for this tort cause of action.  In making this policy choice, the Mexican government has resolved a trade-off among the competing objectives and costs of tort law, involving interests of victims, of

---

[5]Mexico (or, more correctly, the Mexican United States) is a federal republic.  To be precise, the limitation on tort damages at issue in this case was enacted by the State of Mexico, one of the member states of the Mexican United States.

consumers, of manufacturers, and of various other economic and
cultural values.  In resolving this trade-off, the Mexican people,
through their duly-elected lawmakers, have decided to limit tort
damages with respect to a child's death.[6]    It would be
inappropriate -- even patronizing -- for us to denounce this
legitimate policy choice by holding that Mexico provides an
inadequate forum for Mexican tort victims.[7]    In another forum non
conveniens case, the District Court for the Southern District of
New York made this same point observing (perhaps in a hyperbolic
choice of words) that "to retain the litigation in this forum, as
plaintiffs request, would be yet another example of imperialism,
another situation in which an established sovereign inflicted its
rules, its standards and values on a developing nation."  In re
Union Carbide Corp. Gas Plant Disaster at Bhopal, India in
December, 1984, 634 F.Supp. 842, 867 (S.D.N.Y. 1986), aff'd as
modified, 809 F.2d 195 (2d Cir. 1987).  In short, we see no warrant
for us, a United States court, to replace the policy preference of

---

[6]See 1 JORGE A. VARGAS, MEXICAN LAW: A TREATISE FOR LEGAL PRACTITIONERS
AND INTERNATIONAL INVESTORS §§ 1.31-32 (1998) (describing how law is
made in Mexico).

[7]As one legal scholar so aptly noted: "we should have a little
humility. . . . It is past time for us to get it through our heads
that it is not everyone but us who is out of step."  William L.
Reynolds, The Proper Forum for a Suit: Transnational Forum Non
Conveniens and Counter-Suit Injunctions in the Federal Courts, 70
TEX. L. REV. 1663, 1708-09 (1992) (internal quotation marks
omitted).

the Mexican government with our own view of what is a good policy for the citizens of Mexico.

Based on the considerations mentioned above, we hold that the district court did not err when it found that the cap on damages did not render the remedy available in the Mexican forum clearly unsatisfactory.

(ii)

We now turn our attention to Gonzalez's "economic viability" argument -- that is, because there is no economic incentive to file suit in the alternative forum, there is effectively no alternative forum.[8]

---

[8]As a point that might fall in the technical category, the economic viability of a lawsuit may be more appropriate for consideration as a private interest factor, after the court has made the threshold determination that the alternative forum is both amenable and adequate.  This view would seem to accord with the Eighth Circuit's decision in Lehman v. Humphrey Cayman, Ltd., 713 F.2d 339 (8th Cir. 1983).  Lehman involved an Iowa plaintiff, suing in Iowa district court for the death of her husband, an Iowa citizen, in the Cayman Islands.  In reversing a dismissal based on forum non conveniens, the Lehman court evaluated the private and public interest factors for and against dismissal.  As one of the factors, the Lehman court considered the economic viability of the suit in the Cayman Islands, holding that "[t]he court must be alert to the realities of the plaintiff's position, financial and otherwise, and his or her ability as a practical matter to bring suit in the alternative forum."  Id. at 346.  The Lehman court considered the plaintiff's willingness and ability to bring the lawsuit in the alternative forum in the context of all other private and public interest factors.  See also Kryvicky v. Scandinavian Airlines Sys., 807 F.2d 514, 517 (6th Cir. 1986) (same).

We neither gainsay nor approve the holding of Lehman.  We only note that it has no fit to the facts in this case where there are no other private or public interest factors pointing toward Texas

The practical and economic realities lying at the base of this dispute are clear. At oral argument, the parties agreed that this case would never be filed in Mexico. In short, a dismissal on the ground of forum non conveniens will determine the outcome of this litigation in Chrysler's favor.[9] We nevertheless are unwilling to hold as a legal principle that Mexico offers an inadequate forum simply because it does not make economic sense for Gonzalez to file this lawsuit in Mexico. Our reluctance arises out of two practical considerations.

First, the plaintiff's willingness to maintain suit in the alternative (foreign) forum will usually depend on, inter alia, (1) whether the plaintiff's particular injuries are compensable (and to what extent) in that forum; (2) not whether the forum recognizes some cause of action among those applicable to the plaintiff's case, but whether it recognizes his most provable and compensable

───────────────

and away from Mexico as the proper forum to try this case.

In passing, it should be noted that to the extent that economic viability is undermined by the cost of securing an attorney, our circuit has held that "the fact that contingent fees are legally permissible in the United States but legally impermissible in England is not a factor that controls or even significantly influences the forum non conveniens determination." See Coakes v. Arabian Am. Oil Co., 831 F.2d 572, 575 (5th Cir. 1987).

[9]This fact is not unique to this lawsuit. A survey found that between 1945 and 1985, of 85 transnational cases dismissed on the ground of forum non conveniens, only four percent ever reached trial in a foreign court. See David Robertson, Forum Non Conveniens in America and England: "A Rather Fantastic Fiction", 103 L. Q. REV. 398, 418-19 (1987).

action; (3) similarly, whether the alternative forum recognizes defenses that might bar or diminish recovery; and (4) the litigation costs (i.e., the number of experts, the amount of discovery, geographic distances, attorney's fees, etc.) associated with bringing that particular case to trial. These factors will vary from plaintiff to plaintiff, from case to case. Thus, the forum of a foreign country might be deemed inadequate in one case but not another, even though the only difference between the two cases might be the cost of litigation or the recovery for the plaintiff's particular type of injuries. In sum, we find troublesome and lacking in guiding principle the fact that the adequacy determination could hinge on constantly varying and arbitrary differences underlying the "economic viability" of a lawsuit.

Second, if we allow the economic viability of a lawsuit to decide the adequacy of an alternative forum, we are further forced to engage in a rudderless exercise of line drawing with respect to a cap on damages: At what point does a cap on damages transform a forum from adequate to inadequate? Is it, as here, $2,500? Is it $50,000? Or is it $100,000? Any recovery cap may, in a given case, make the lawsuit economically unviable. We therefore hold that the adequacy inquiry under <u>Piper Aircraft</u> does not include an evaluation of whether it makes economic sense for Gonzalez to file this lawsuit in Mexico.

C

Having concluded that Mexico provides an adequate forum,[10] we now consider whether the private and public interest factors nonetheless weigh in favor of maintaining this suit in Texas. As noted, the district court concluded that the public and the private interest factors weighed in favor of Mexico and dismissed the case on the ground of forum non conveniens. Our review of this conclusion is restricted to abuse of discretion. See Alpine View, 205 F.3d at 220.

The district court found that almost all of the private and public interest factors pointed away from Texas and toward Mexico as the appropriate forum. It is clear to us that this finding does not represent an abuse of discretion. After all, the tort victim was a Mexican citizen, the driver of the Chrysler LHS (Gonzalez's wife) is a Mexican citizen, and the plaintiff is a Mexican citizen. The accident took place in Mexico. Gonzalez purchased the car in Mexico. Neither the car nor the air bag was designed or manufactured in Texas. In short, there are no public or private interest factors that would suggest that Texas is the appropriate forum for the trial of this case.

III

---

[10]As noted, the parties concede that Mexico represents an amenable forum.

For the foregoing reasons, the district court's dismissal of this case on the ground of forum non conveniens is

AFFIRMED.